# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| **PROTECT YOUR EARTH SUIT, INC.** **d/b/a BORO HOLISTIC HEALTH,** | |
| **Plaintiff,** | **Case No.:** _____ |
| **v.** | |
| **BRITTANY SUTA,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## VERIFIED COMPLAINT

Plaintiff Protect Your Earth Suit, Inc., d/b/a Boro Holistic Health ("Boro" or "Plaintiff"), by and through undersigned counsel, for its Complaint against Defendant Brittany Suta ("Defendant"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

## PRELIMINARY STATEMENT

1. Boro brings this action against Defendant for her breach of contract and the duties of loyalty and good faith and fair dealing under Tennessee common law, for trademark infringement, unfair competition, and cybersquatting under the Lanham Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1051, *et seq.*, for trademark infringement and unfair competition under Tennessee law, for violations of the Tennessee Consumer Protection Act (the "TCPA"), Tenn. Code Ann. § 47-18-101, *et seq.*, and for misappropriation of trade secrets under the federal Defend Trade Secrets Act (the "DTSA"), 18 U.S.C. § 1836, *et seq.*, and the Tennessee Uniform Trade Secrets Act (the "TUTSA"), Tenn. Code Ann. §§ 47-25-1701, *et seq.* Each of the

1

foregoing claims arises from Defendant's actions relative to her formation and operation of a directly competitive business while employed by Boro and following her termination upon Boro's discovery of the competing venture.

2.     Boro is a holistic health clinic based in Murfreesboro, Tennessee, that, through substantial investment, education, research, and clinical refinement, developed a proprietary functional genomics interpretation and treatment system that it markets under the trademark BORO GENE MAPPING.

3.     Boro's proprietary functional genomics interpretation and treatment system, and the confidential methodology, patient treatment regimens and protocols, and related materials that comprise it, is a substantial business asset that provides Boro with a competitive advantage in the holistic healthcare industry.

4.     In addition to its common law rights in the BORO GENE MAPPING trademark, Boro owns valuable intellectual property rights in other trademarks, including, without limitation, a federal registration for the mark BIOLOGICAL BLUEPRINT, U.S. Reg. No. 7,798,866, for "Holistic health services namely frequency analysis and DNA analysis through saliva, hair and nail sampling and diagnostics" in Class 44 (the "BIOLOGICAL BLUEPRINT Mark"). *See* Exhibit A.

5.     Defendant, as an employee of Boro from October of 2025 through her termination in June of 2026, was entrusted with access to Boro's confidential and proprietary systems as part of her affiliation with Boro, during which she occupied a position of trust and confidence, owed Boro a duty of loyalty, and personally conducted patient "interpretation" appointments using Boro's proprietary system.

2

6. While still affiliated with Boro and bound by her duties to the company, Defendant planned, formed, launched, and operated a directly competing holistic health consulting business in the exact geographic region where Boro is headquartered.

7. Upon information and belief, Defendant, through the venture d/b/a Blueprint Wellness Co., has used and/or disclosed Boro's trade secrets, breached the duties she owed to Boro, and adopted and used the confusingly similar "Blueprint" mark and similar marketing materials for virtually identical holistic healthcare services, all for her own benefit and to Boro's detriment.

8. As a direct result of Defendant's ongoing violations, Boro is suffering, and will continue to suffer, immediate and irreparable harm, including, without limitation, the loss of confidential business information, erosion of customer goodwill, and erosion of its trademark rights, for which there is no adequate remedy at law.

9. Absent immediate injunctive relief, this harm will continue and escalate. Boro therefore seeks immediate injunctive relief to preclude further irreparable harm, as well as monetary relief and an award of attorneys' fees, as provided for under the relevant federal and state laws implicated herein.

## JURISDICTION

10. This is a civil action arising, in substantial part, under the Lanham Act and the DTSA. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1338(a) (any act of Congress relating to patents, copyrights, and trademarks), as well as 18 U.S.C. § 1836(c) (original jurisdiction for DTSA claims).

11. This Court also has supplemental jurisdiction over the claims in this complaint which arise under the statutes and common laws of Tennessee pursuant to 28 U.S.C. § 1367(a),

3

as the state law claims are so closely related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

12. This Court has personal jurisdiction over Defendant because, upon information and belief, she resides in this state, specifically at 3018 Kedzie Drive, Murfreesboro, Tennessee 37130. Moreover, Defendant's actions as alleged in this Complaint were committed in this state, and Defendant presently advertises her services through social media accounts which connect her to Blueprint Wellness Co. and list a Murfreesboro address as the principal place of business for the operation. *See* Exhibits B and C.

## VENUE

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), given that Defendant, upon information and belief, resides in this district. Additionally, venue is likewise proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because Defendant transacts business in this district and a substantial part of the events giving rise to this dispute occurred and are continuing to occur in this district. *See id.*

## PARTIES

14. Plaintiff Protect Your Earth Suit, Inc., is a corporation organized and existing under the laws of the State of Tennessee, doing business as Boro Holistic Health, with its principal place of business at 1602 W. Northfield Blvd., Suite 509, Murfreesboro, Tennessee 37129.

15. Defendant Brittany Suta is an individual and, upon information and belief, a citizen of the State of Tennessee who resides at 3018 Kedzie Drive, Murfreesboro, Tennessee 37130.

4

**Boro and Its Proprietary Holistic Treatment Products and Systems**

16. Boro is a holistic health clinic in Murfreesboro, Tennessee that provides a variety of medical diagnostic testing services, naturopathic health consultations, wellness protocol recommendations, and its own line of proprietary supplements (the "Boro Goods and Services").

17. Over more than a decade, and through the substantial investment of time, money, education, and research by Dr. Suzanna Underwood ("Dr. Underwood"), founder and CEO of Boro, and her team, Boro has continued to expand the Boro Goods and Services to better cater to the needs of Boro's patients. One such expansion includes a proprietary functional-genomics interpretation and treatment system that it markets under the trademark BORO GENE MAPPING.

18. BORO GENE MAPPING is not an off-the-shelf, publicly available genetic test. It is a comprehensive, proprietary system through which Boro analyzes a defined panel of genetic variants—single-nucleotide polymorphisms, or "SNPs"—and utilizes the intimate trade secret knowledge of the Boro Goods and Services held exclusively by Dr. Underwood and members of Boro's team to translate the results into individualized clinical protocols, including targeted nutrition, lifestyle, and supplement recommendations.

19. The trade secrets underpinning BORO GENE MAPPING arise not from the existence and identification of the underlying genes, which are matters of public science. The trade secrets arise from Boro's unique methodology for interpreting how a given patient's specific genetic variants—which are identified using a white labeled test kit that was customized for the BORO GENE MAPPING service—function and interact as a whole; from Boro's methodology in converting that interpretation into specific, actionable clinical recommendations

based on available options within the umbrella of the Boro Goods and Services; from the proprietary materials Boro uses in connection with the BORO GENE MAPPING service; and from the novel combination of the steps taken and materials used throughout the process.

20. Most genetic tests address only genetic identification, whereas BORO GENE MAPPING analyzes gene "speed, direction, and interaction" in order to design protocols that account for multi-gene interactions and align with the Boro Goods and Services at large, thereby implicating the proprietary and confidential know-how developed by Boro over more than a decade.

21. BORO GENE MAPPING is one of the more recently developed proprietary offerings in the suite of Boro Goods and Services.

22. Specifically, and relevant to this Complaint, BORO GENE MAPPING was first offered to patients after Defendant was hired in October of 2025, and after Defendant was entrusted with Boro's proprietary information and protocols to provide Boro's recommendations to its patients.

**The Boro Trade Secrets**

23. Through its development of BORO GENE MAPPING, Boro created and maintains a body of confidential and proprietary information and protocols (collectively, the "Boro Trade Secrets"), including, individually, collectively, and without limitation:

    a. The vendor relationships that led to Boro's privately white-labeled gene testing kits;

    b. Boro's unique methodology and clinical decision rules for interpreting the function, speed, direction, and interaction of multiple, specific genetic variants in

6

combination, and for translating that interpretation into individualized clinical protocols based on existing Boro Goods and Services;

c. Boro's internal protocol-design tools, including its "Summary at a Glance" multi-gene interaction guides and its gene-by-gene nutrient, supplement, and "caution" correlation tables (such as the materials titled "Major Gene Nutrients and Interactions" and related gene-mutation support tables), which compile in one place Boro's clinical conclusions about which interventions benefit or harm patients with particular combinations of variants;

d. Boro's confidential BORO GENE MAPPING Processing Flow Chart, which documents Boro's end-to-end operational workflow for delivering the service, including its intake, ordering, laboratory-processing, reporting, and interpretation procedures, the roles of specific personnel, and Boro's laboratory and vendor relationships;

e. Boro's patient-facing and clinician-facing report formats and its consultation "notes" and "insights" templates;

f. Boro's compiled patient information and patient relationships;

g. Boro's related proprietary services, systems, protocols, and business methods, including, without limitation, BIOLOGICAL BLUEPRINT®, BORO COMPLETE™, EDEN21™, BORO LABS™, its Functional Laboratory Interpretation Systems, and the associated educational, training, marketing, and operational materials; and

h. Combinations of the foregoing individual elements.

7

24.     The Boro Trade Secrets derive independent economic value, actual and potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from their disclosure or use.

25.     Among other things, the Boro Trade Secrets enable Boro to deliver differentiated services that competitors cannot replicate without independently undertaking the same investment.

26.     A competitor who obtains the Boro Trade Secrets could rapidly and inexpensively replicate that differentiated service.

### Boro's Reasonable Efforts to Maintain Secrecy

27.     Boro has taken reasonable measures to keep the Boro Trade Secrets secret.

28.     Boro internally and externally designates its systems and materials as originating from Boro, including through trademark designations which designate Boro as the source of said systems and materials (e.g., BORO GENE MAPPING, BIOLOGICAL BLUEPRINT, BORO COMPLETE, EDEN21, and BORO LABS).

29.     Additionally, Boro labels certain proprietary materials as "internal" and/or "confidential," thereby giving notice to anyone with access that the information is not intended for public disclosure or use outside of Boro.

30.     Boro stores its proprietary materials in access-controlled systems and limits access to those materials to Boro personnel who need the access to perform their roles.

31.     Boro maintains patient data and its other confidential documents in secured systems (within Google Drive) with restricted, password-protected access, such that patient information is accessible only to the treating practitioner.

8

32. Boro requires members of its team to acknowledge in writing the confidential and proprietary nature of Boro's systems, protocols, workflows, educational materials, and business processes, and to agree not to use or disclose them for the benefit of a competing venture during, and for a period following, their affiliation with Boro.

33. As described below, Defendant separately agreed in writing, as a condition of her affiliation with Boro, not to compete with Boro within a defined geographic area for a defined period following the end of her affiliation, which reflects the parties' mutual understanding that Boro's methods and systems are proprietary and valuable.

**Defendant's Affiliation with Boro and Her Access to the Boro Trade Secrets**

34. On or about October 7, 2025, Defendant applied to work with Boro, seeking the position of "New Patient & Clinic Operations Coordinator." *See* <u>Exhibit B</u>.

35. On or about October 7, 2025, Defendant and Boro entered into a written agreement (the "Agreement") under which Defendant became affiliated with Boro. *See* <u>Exhibit D</u>.

36. The Agreement identified the purpose of the parties' venture as "diagnostic testing, protocol recommendations, and holistic health consultations," and identified Boro's principal place of business at 1602 W. Northfield Blvd., Suite 509, Murfreesboro, Tennessee 37129. *Id.*

37. The Agreement provided that, upon the end of the parties' relationship, Defendant "agree[d] to not practice frequency specific modalities within a fifty-mile radius of [Boro's] Principal Place of Business . . . for a minimum of two years." *Id.*

38. The Agreement is styled as a limited partnership agreement and designates Defendant as a "limited partner." *Id.*

9

39. Notwithstanding that designation, no certificate of limited partnership was executed or filed with the Tennessee Secretary of State, and no such entity was ever formed. Nonetheless, Defendant applied for an operational employee position with Boro, performed services for Boro, was held out to patients as a member of Boro's clinical team, and was entrusted with Boro's patients, confidential information, clinic operations, and the Boro Trade Secrets such that, even if no limited partnership existed, Defendant functioned as Boro's employee or agent.

40. After Defendant began working for Boro, Boro started designing and offering the BORO GENE MAPPING service to its patients.

41. Specifically, the BORO GENE MAPPING service was first added to the Boro website on or about October 30, 2025, with the first transaction related to that service occurring on November 5, 2025.

42. During a staff meeting in November of 2025, Defendant expressed interest in assisting Dr. Underwood with the new BORO GENE MAPPING service offering, despite having no notable education or experience with the subject matter.

43. Catering to Defendant's expressed interests, Boro created a new position centered around the BORO GENE MAPPING service; Defendant's role subsequently transitioned from "New Patient & Clinic Operations Coordinator" into daily involvement with the BORO GENE MAPPING service.

44. To enable Defendant to succeed in the new role, Boro adjusted Defendant's compensation to subsidize expenses for additional coursework and certifications that pertained to the science underlying the BORO GENE MAPPING service.

45. Boro likewise incurred expenses in connection with Defendant's training, such as paid training sessions with third-party vendors of components (e.g., the gene testing kits) used for the BORO GENE MAPPING service.

46. Due to Boro's relationship with certain vendors and its high volume of sales, Boro received access to private educational resources and training materials that were made available exclusively due to the business relationship and are not generally available to Boro's competitors.

47. During her affiliation with Boro, on or about December 9, 2025, Defendant was entrusted with the Boro Trade Secrets and given access to the Google Drive folder in which Boro's confidential documents were stored.

48. Boro's confidential documents that Defendant was given access to included proprietary training materials, patient education documents, protocols, workflows, and genetic variant reference materials developed and maintained by Boro for internal use and patient education.

49. Among other things, Defendant conducted BORO GENE MAPPING "interpretation" appointments, in which she met with patients to interpret and explain their genetic results and provide treatment recommendations using the Boro Trade Secrets, including, without limitation, Boro's proprietary interpretation system, reports, and protocol-design tools.

50. During this time, Defendant had direct access to the Boro Trade Secrets, including, without limitation, Boro's proprietary interpretation methodology, its internal protocol-design tools and correlation tables, its confidential processing workflow, its report and consultation templates, its patient relationships, and its laboratory and vendor relationships.

11

51. Defendant received that access and knowledge in confidence and in a position of trust, and she knew, or had reason to know, that the Boro Trade Secrets were confidential and proprietary, and that her access to the Boro Trade Secrets was limited to her work for Boro.

52. In her role with Boro, Defendant acted as Boro's agent and representative in dealing with Boro's patients. She personally conducted patient-facing "interpretation" appointments on Boro's behalf, was held out to patients as part of Boro's clinical team, and was entrusted with Boro's patient relationships, confidential information, vendor and laboratory relationships, and the operation of Boro's clinic.

53. By virtue of that relationship of trust and confidence, and her authority to act for Boro in its dealings with patients, Defendant owed Boro fiduciary duties, including a duty of loyalty and a duty of good faith and fair dealing.

54. Among other things, Defendant owed Boro a duty to act solely for Boro's benefit in all matters connected with her role, not to compete with Boro or to advance her own competing interests during her affiliation, not to divert Boro's patients, business opportunities, or goodwill to herself, and not to use her position with Boro to prepare a competing venture.

**The Updated Contract, Defendant's Refusal to Sign, and Termination of Employment**

55. On or about Friday, June 12, 2026, Boro held a team meeting to present its entire team with a revised contract (the "Updated Contract"), which sought to encompass the proprietary and confidential nature of information used in connection with the newest set of Boro Goods and Services, including the Boro Trade Secrets connected to the new BORO GENE MAPPING service. *See* Exhibit E.

56. Every member of Boro's team reviewed and signed the Updated Contract *except* Defendant, who refused.

12

57.     During the June 12, 2026, team meeting, Defendant expressed reluctance to sign the Updated Contract because she may want to independently use the same proprietary processes, and not refer patients to Boro for the recommended course of treatment, *i.e.*, to use the Boro Trade Secrets to directly compete with Boro.

58.     On June 15, 2026, the next business day after Boro presented the Updated Contract that Defendant refused to sign, Defendant did not appear for her shift, forcing other members of the Boro team to cover several patient appointments that were scheduled for the day.

59.     Later that day, Boro informed Defendant that her employment with Boro was terminated effective immediately. Boro requested that Defendant return all Boro property, to which Defendant stated that she would return branded clinic apparel and that "[a]ll company equipment, records, files, and materials remain at the clinic."

**Defendant's Operation of a Competing Business Using Confusingly Similar Marks**

60.     At all times relevant to this dispute, Boro was and continues to be the owner of the BIOLOGICAL BLUEPRINT Mark.

61.     Notably, the registration on the Principal Register for the BIOLOGICAL BLUEPRINT Mark includes a disclaimer for the descriptive word "biological," making "blueprint" the dominant and inherently distinctive literal element of the mark. *See* Exhibit A.

62.     Boro's registration of the BIOLOGICAL BLUEPRINT Mark is valid, subsisting, and in full force and effect, and constitutes prima facie evidence of the validity of the mark, of Boro's ownership of the mark, and of Boro's exclusive right to use the mark in commerce in connection with the registered services. 15 U.S.C. §§ 1057(b), 1115(a).

63. Boro has used the BIOLOGICAL BLUEPRINT Mark in interstate commerce since at least as early as August 1, 2018 in connection with its holistic health, frequency analysis, and DNA analysis services, including, without limitation, its BORO GENE MAPPING services.

64. The mark identifies Boro as the source of those services in the mind of the consuming public.

65. The BIOLOGICAL BLUEPRINT Mark is valuable to Boro and is associated in consumers' minds with Boro and the quality of its services.

66. At all times relevant to this dispute, Defendant was and is well aware of the BIOLOGICAL BLUEPRINT Mark and of Boro's use of "BLUEPRINT"-formative branding for its proprietary functional-genomics services, having been entrusted with Boro's proprietary systems and the Boro Trade Secrets during her affiliation with Boro.

67. Shortly after the termination of Defendant's employment with Boro, Boro first discovered that Defendant had been operating a competing business without Boro's permission under the name "Blueprint Wellness Co." while she was employed with the company.

68. Upon information and belief, Defendant (i) began operating Blueprint Wellness Co. in April of 2026; (ii) obtained a National Provider Identifier as a "Health and Wellness Coach" in Murfreesboro, Tennessee, that became active on or about May 12, 2026; and (iii) registered the website "www.blueprintwellness.co" (the "Defendant's Website") on May 17, 2026. *See* Exhibits C, F, and G.

69. Upon information and belief, Defendant's actions while employed by Boro were not merely performed in her free time in preparation to launch a competing enterprise: Boro was paying Defendant to conceive, plan for, and run a competing enterprise while she was actively working for Boro.

70.     Upon information and belief, Defendant used her position with Boro to access the Boro Trade Secrets and other company property to build a competing business, which she launched and operated while still employed by Boro.

71.     Upon information and belief, Defendant operates Blueprint Wellness Co. from her residence in Murfreesboro, Tennessee, the same town within which Boro's principal place of business exists.

72.     Using the Blueprint Wellness Co. name, Defendant offers services that are materially identical to those offered by Boro under the BIOLOGICAL BLUEPRINT Mark, including, without limitation, the BORO GENE MAPPING service.

73.     Defendant markets herself as a "Functional Genomics Practitioner" and "Functional Genomics & Nutrition Specialist" who helps clients "make sense of [their] genetic reports" and "turn [their] DNA data into real answers." *See* Exhibits H-I.

74.     Defendant purports to sell genetic-report interpretation consultations, "pharmacogenetic testing," an offering called "The Blueprint Package," and "Understanding MTHFR" consultations, together with supplement recommendations. *Id*.

75.     Upon information and belief, Defendant's competing services are offered to the same class of consumers, through the same market channels, and originating from the same geographic region (Murfreesboro, Tennessee) from which Boro offers its services under the BIOLOGICAL BLUEPRINT Mark.

76.     Moreover, a review of the Facebook page for Blueprint Wellness Co. confirms that Defendant's provision of directly competitive services under the Blueprint Wellness Co. name extends beyond local markets and into interstate commerce.

77. Specifically, a review left by "John Midyette" from Durham, North Carolina on June 16, 2026, states as follows:

> This is a wonderful practice. After months of finding out the hard way that the traditional medical system couldn't really help me and did not have the depth of knowledge required, I found Blueprint and Brittany through a Facebook group, and I was amazed at the expertise and the thorough systematic and methodical approach to problem identification/analysis. Highly-recommended.

*See* Exhibit J.

78. Defendant promotes the analysis of gene "speed" and "direction" and multi-gene interactions (for example, COMT, MAOA, MTHFR, histamine/DAO, methylation, and detoxification pathways), frames genetics as the body's "owner's manual" or "blueprint," and promises to "connect the dots" between a patient's genetics and symptoms with personalized nutrition and supplement protocols—the same framework and rhetoric underpinning the BORO GENE MAPPING service. *Compare* Exhibits I, L *with* Exhibits K, M.

79. Defendant's promotional activities under the Blueprint Wellness Co. designation mirror the distinctive content used by Boro to promote the BORO GENE MAPPING service. *Id*.

80. Defendant's use of the "Blueprint" marks for highly related or identical services in the same market is likely to cause confusion, to cause mistake, or to deceive consumers as to the source, sponsorship, affiliation, or approval of Defendant's services, including by causing consumers to believe, incorrectly, that Defendant's services originate with, are endorsed by, or are otherwise connected with Boro.

81. Upon information and belief, Defendant adopted the "Blueprint" marks with knowledge of Boro's BIOLOGICAL BLUEPRINT Mark and with the intent to trade on Boro's goodwill and reputation, which supports an inference of likelihood of confusion and renders this an exceptional case.

16

82. Defendant's infringing use is causing and will continue to cause Boro irreparable harm to its goodwill and to the value of the BIOLOGICAL BLUEPRINT Mark, for which there is no adequate remedy at law.

**Defendant's Misappropriation of the Boro Trade Secrets**

83. Defendant acquired the Boro Trade Secrets through her position of trust and confidence with Boro, under circumstances giving rise to a duty to maintain their secrecy and limit their use.

84. Upon information and belief, Defendant has used and/or disclosed, and threatens to continue to use and/or disclose, the Boro Trade Secrets without Boro's consent, for the benefit of her competing business and to Boro's detriment.

85. Defendant's use and/or disclosure of the Boro Trade Secrets may be inferred from her access to those trade secrets, combined with the substantial similarity between BORO GENE MAPPING and the services, content, and methods that Defendant offers through Blueprint Wellness Co., and from the speed with which she was able to launch a fully formed, directly competing service.

86. Defendant knew or had reason to know that her knowledge of the Boro Trade Secrets was derived from or through her position of trust with Boro and was acquired under circumstances giving rise to a duty to maintain the secrecy of and limit the use of the Boro Trade Secrets.

87. Upon information and belief, Defendant used and continues to use the same third-party laboratories and vendors that Boro uses, which she had access to through Boro's confidential processing workflow and unique third-party relationships.

88.     Upon information and belief, materials in Defendant's possession and used in connection with the Blueprint Wellness Co. services mirror the Boro Trade Secrets, including, without limitation, proprietary protocol-design tools such as gene-by-gene nutrient and supplement correlation tables and consultation-note formats that correspond to Boro's "Summary at a Glance," "Major Gene Nutrients and Interactions," and BORO GENE MAPPING "notes" materials.

89.     Upon information and belief, while working for Boro and owing Boro a duty of loyalty, Defendant planned and prepared to compete with Boro.

90.     Upon information and belief, while working for Boro, Defendant (i) developed her competing offerings, copying or assembling competing materials, (ii) established competing vendor and laboratory relationships, and (iii) cultivated Boro's patients and prospective patients for her own benefit.

91.     Upon information and belief, while working for Boro, Defendant diverted or attempted to divert Boro's patients, prospective patients, and goodwill to Blueprint Wellness Co.

92.     Defendant's actions have caused, and will continue to cause, Boro irreparable harm, including the loss of the confidentiality of its trade secrets, the loss of patients and goodwill, and the impairment of its competitive advantage, for which there is no adequate remedy at law.

93.     Defendant's actions have also caused Boro monetary damages, including Boro's actual losses and the amount of any unjust enrichment Defendant has obtained, in amounts to be proven at trial.

94.     Defendant's actions were willful and malicious.

95. Defendant acquired Boro's trade secrets in a position of trust, knew that they were proprietary and confidential, and, upon information and belief, deliberately used them to build a directly competing business in breach of the Agreement and using a name that trades on the goodwill of Boro's BIOLOGICAL BLUEPRINT Mark.

## COUNT I — BREACH OF DUTY OF LOYALTY

96. Boro incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

97. As Boro's employee or agent, Defendant owed Boro a duty of loyalty during her affiliation.

98. The duty of loyalty Defendant owed to Boro required her to act solely for Boro's benefit in matters within the scope of her role and prohibited her from, *inter alia*, competing with Boro, soliciting Boro's patients for a competing venture, and/or utilizing Boro's proprietary resources in preparation to launch and/or for operation of a directly competing venture during her affiliation—even in the absence of a covenant not to compete.

99. Defendant breached her duty of loyalty by, upon information and belief, attempting to serve two masters, by directly competing with Boro, utilizing company resources to do so, and cultivating and soliciting Boro's patients and prospective patients for her own benefit, while still working for and affiliated with Boro.

100. Defendant's breach of the duty of loyalty rests on her disloyal competition during her affiliation and is independent of any misappropriation of the Boro Trade Secrets.

101. As a result of Defendant's disloyalty, Boro has been damaged and continues to be damaged.

19

102. Boro is entitled to recover its damages and to disgorgement of the profits and benefits Defendant received because of her disloyal activities, as well as the forfeiture of compensation paid to Defendant during the period of her breach, together with punitive damages.

### COUNT II — BREACH OF CONTRACT

103. Boro incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

104. The Agreement is a valid and enforceable contract supported by consideration.

105. Among other terms, the Agreement provides that the agency relationship was formed to "engage in the business of diagnostic testing, protocol recommendations, and holistic health consultations…" and that upon the end of the parties' relationship, Defendant would not practice frequency-specific modalities within a fifty-mile radius of Boro's principal place of business for a minimum of two years.

106. Boro performed its obligations under the Agreement.

107. Defendant breached the Agreement by establishing and operating a competing holistic-health practice—which, upon information and belief, included and includes holistic health services that are highly related to the practice of frequency-specific modalities—within a fifty-mile radius of Boro's principal place of business and within two years after the end of the parties' relationship.

108. Through these actions, Defendant breached the Agreement's implied covenant of good faith and fair dealing.

109. Boro pleads this Count in the alternative and on facts independent of any misappropriation of the Boro Trade Secrets. Boro's contractual remedies are expressly preserved

and are not displaced by the Tennessee Uniform Trade Secrets Act. Tenn. Code Ann. § 47-25-1708(b)(1).

110. As a direct and proximate result of Defendant's breaches, Boro has suffered and will continue to suffer damages in amounts to be proven at trial, and Boro is entitled to its damages and to injunctive relief enforcing the Agreement's covenant not to compete.

## COUNT III — INTENTIONAL INTERFERENCE WITH BUSINESS RELATIONSHIPS

111. Boro incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

112. Boro has existing business relationships with its patients, and prospective business relationships with prospective patients, in and around Murfreesboro, Tennessee.

113. By virtue of her role with Boro, in which she personally served Boro's patients, Defendant had knowledge of Boro's specific patient and prospective-patient relationships.

114. Upon information and belief, Defendant intentionally interfered with those relationships by soliciting and diverting Boro's patients and prospective patients to her competing business, Blueprint Wellness Co.

115. Defendant acted with an improper motive and through improper means, including by exploiting the trust and the patient relationships entrusted to her while she was affiliated with Boro, by competing in violation of the duties she owed Boro, and by concealing her continued affiliation—and former affiliation—with Boro from patients and the public.

116. Boro pleads this Count in the alternative and on facts independent of any misappropriation of the Boro Trade Secrets. This Count rests on Defendant's diversion of Boro's patient and business relationships through independently wrongful conduct.

21

117. As a direct and proximate result of Defendant's tortious interference, Boro has suffered and will continue to suffer damages, including lost patients, lost revenue, and lost goodwill, in amounts to be proven at trial, and Defendant has been unjustly enriched. Defendant's conduct was intentional and malicious, entitling Boro to punitive damages.

## COUNT IV — UNJUST ENRICHMENT

118. Boro incorporates by reference each of the foregoing paragraphs as if fully set forth herein. Boro pleads this Count in the alternative and on facts independent of any misappropriation of the Boro Trade Secrets.

119. Defendant has been unjustly enriched by her actions, including but not limited to taking wrongful advantage of the industry knowledge, trade secrets, and training Boro provided, and monetizing that information to her benefit and Boro's detriment.

120. Boro is entitled to damages in an amount to be determined at trial for such unjust enrichment.

## COUNT V — FEDERAL TRADEMARK INFRINGEMENT

121. Boro incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

122. Boro is the owner of the BIOLOGICAL BLUEPRINT Mark, which is registered on the Principal Register and is valid, subsisting, and in full force and effect, and therefore constitutes prima facie evidence of the validity of the mark, of Boro's ownership of the mark, and of Boro's exclusive right to use the mark in connection with the registered services. 15 U.S.C. §§ 1057(b), 1115(a).

123. Without Boro's consent, Defendant has used in commerce a reproduction, counterfeit, copy, or colorable imitation of the BIOLOGICAL BLUEPRINT Mark—including

22

"Blueprint Wellness Co." and "The Blueprint Package"—in connection with the sale, offering for sale, distribution, and advertising of services that are identical or nearly identical to Boro's registered services, in a manner that is likely to cause confusion, to cause mistake, or to deceive, in violation of 15 U.S.C. § 1114(1).

124. The likelihood of confusion is heightened by the identity of the services, the strength of the distinctive "BLUEPRINT" element, the parties' shared geographic market and overlapping consumers and marketing channels, Defendant's former affiliation with Boro, and, upon information and belief, Defendant's intent to trade on Boro's goodwill.

125. Defendant's infringement was knowing, willful, and intentional, rendering this an exceptional case under 15 U.S.C. § 1117(a).

126. As a direct and proximate result of Defendant's infringement, Boro has suffered and will continue to suffer irreparable harm and monetary damages, and Defendant has been unjustly enriched, entitling Boro to injunctive relief under 15 U.S.C. § 1116 and to monetary relief under 15 U.S.C. § 1117, including Defendant's profits, Boro's damages, the costs of the action, enhanced damages, and reasonable attorneys' fees.

## COUNT VI — FEDERAL UNFAIR COMPETITION

127. Boro incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

128. Boro owns and uses the BIOLOGICAL BLUEPRINT Mark and its associated "BLUEPRINT"-formative branding in commerce in connection with its holistic-health, frequency-analysis, and DNA-analysis services, and that mark and branding identify Boro as the source of those services and are associated with Boro's goodwill.

129. Defendant's use in commerce of "Blueprint Wellness Co." and "The Blueprint Package," and related words, terms, names, and designations, constitutes a false designation of origin that is likely to cause confusion, to cause mistake, or to deceive as to the affiliation, connection, or association of Defendant with Boro, or as to the origin, sponsorship, or approval of Defendant's services, in violation of 15 U.S.C. § 1125(a)(1)(A).

130. Defendant's conduct was knowing and willful, and has caused and will continue to cause Boro irreparable harm and monetary damages, entitling Boro to injunctive relief under 15 U.S.C. § 1116 and to monetary relief under 15 U.S.C. § 1117, including Defendant's profits, Boro's damages, costs, enhanced damages, and reasonable attorneys' fees.

## COUNT VII — CYBERSQUATTING

131. Boro incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

132. Boro owns all rights in and to the BIOLOGICAL BLUEPRINT Mark, the dominant and inherently distinctive literal element of which is the term "BLUEPRINT," and which was distinctive as of the date that Defendant registered and began using the domain on which Defendant's Website is hosted.

133. Upon information and belief, on or about May 17, 2026, Defendant registered and began using the domain name "www.blueprintwellness.co" (the "Domain Name"), which she presently uses to host Defendant's Website in connection with her competing holistic-health and genetic-analysis services.

134. The Domain Name is confusingly similar to, and incorporates the dominant "BLUEPRINT" element of, Boro's BIOLOGICAL BLUEPRINT Mark.

24

135. Defendant registered and used the Domain Name with a bad faith intent to profit from its confusing similarity to Boro's BIOLOGICAL BLUEPRINT Mark. Among other things, upon information and belief:

a. Defendant registered the Domain Name despite having no intellectual property rights in the Blueprint Wellness designation or any name or mark referenced or reflected in the Domain Name;

b. The Domain Name does not consist of Defendant's legal name or any name otherwise commonly used to identify Defendant;

c. Prior to her formation of a competing venture, Defendant made no prior use of the Domain Name in connection with the bona fide offering of any goods or services;

d. Defendant makes no bona fide noncommercial or fair use of the BIOLOGICAL BLUEPRINT Mark in any site accessible under the Domain Name;

e. Defendant intended, as plausibly inferred by the facts alleged in this Complaint, to divert patients from Boro's website to Defendant's Website in a manner that would harm Boro's goodwill in the BIOLOGICAL BLUEPRINT Mark and create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the Defendant's Website, all to Defendant's benefit and Boro's detriment;

f. Defendant registered the Domain Name while she was still affiliated with and employed by Boro, and after she had obtained intimate knowledge of Boro's rights in the BIOLOGICAL BLUEPRINT Mark and its "BLUEPRINT"-formative branding, having been entrusted with Boro's proprietary systems and the Boro Trade Secrets during that affiliation; and

25

g. Defendant's Website utilizes representations, claims, and stylistic presentations that parallel the distinctive content and positioning of Boro's BORO GENE MAPPING service and the BIOLOGICAL BLUEPRINT Mark in order to create an appearance of credibility and expertise in the same industry.

136. Defendant's conduct is directly and proximately causing substantial, immediate, and irreparable harm and injury to Boro, and to its goodwill and reputation, and will continue to damage Boro unless enjoined by this Court. Boro has no adequate remedy at law.

137. Boro is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, transfer of the Domain Name to Boro.

138. Boro is further entitled to recover its damages and Defendant's profits, enhanced as the Court deems appropriate and equitable, in amounts to be proven at trial, pursuant to 15 U.S.C. § 1117(a).

139. Alternatively, Boro is entitled to maximum statutory damages in the amount of $100,000 for the Domain Name pursuant to 15 U.S.C. § 1117(d).

140. This is an exceptional case, and Boro is entitled to recover its reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a), together with pre-judgment and post-judgment interest.

### COUNT VIII — COMMON LAW TRADEMARK INFRINGEMENT

141. Boro incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

142. Through its use in commerce of the BIOLOGICAL BLUEPRINT Mark and its associated "BLUEPRINT"-formative branding, Boro has acquired and owns common-law trademark rights in those marks in Tennessee in connection with its holistic-health services.

26

143. Defendant's unauthorized use of confusingly similar "BLUEPRINT" marks for highly related, if not identical services in the same market is likely to cause confusion, mistake, or deception as to the source, sponsorship, or affiliation of her services, and constitutes trademark infringement under Tennessee common law.

144. Defendant's conduct was willful and undertaken with knowledge of Boro's rights, and has caused and will continue to cause Boro irreparable harm and monetary damages, entitling Boro to injunctive relief, to Boro's damages and Defendant's profits, and to punitive damages.

## COUNT IX — COMMON LAW UNFAIR COMPETITION

145. Boro incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

146. Tennessee recognizes a common-law cause of action for unfair competition, which protects against, among other things, the passing off of one's goods or services as those of another.

147. Defendant engaged in unfair competition under Tennessee common law by using the position of trust and confidence entrusted to her by Boro to compete against Boro, including, on information and belief, by preparing to compete and cultivating Boro's current and prospective patients for her own benefit while still affiliated with Boro, and by soliciting and diverting Boro's patients, prospective patients, and goodwill to her competing business after the end of her affiliation.

148. By adopting and using the confusingly similar "Blueprint Wellness Co." and "The Blueprint Package" marks for services identical to Boro's, in the same market and to the same consumers, Defendant has passed off and is likely to pass off her competing services as

originating with, sponsored by, or affiliated with Boro, and has otherwise competed unfairly by trading on the goodwill associated with the BIOLOGICAL BLUEPRINT Mark and "BLUEPRINT"-formative branding.

149. Defendant's competitive conduct was deceptive and predatory, including her concealment of her affiliation with Boro from patients and the public and her invitation to patients to "get expert guidance" with respect to their genetic testing results, and was undertaken to gain an unfair advantage over Boro in the same market.

150. Defendant's conduct was willful and undertaken with knowledge of Boro's rights, and constitutes unfair competition under Tennessee common law.

151. As a direct and proximate result of Defendant's unfair competition, Boro has suffered and will continue to suffer irreparable harm and monetary damages, and Defendant has been unjustly enriched, entitling Boro to injunctive relief, to compensatory damages and disgorgement of Defendant's resulting gains, and to punitive damages.

## COUNT X — VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT

152. Boro incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

153. The TCPA declares unlawful unfair or deceptive acts or practices affecting the conduct of any trade or commerce, including, *inter alia*, (i) "causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services"; (ii) "causing likelihood of confusion or misunderstanding as to affiliation, connection or association with, or certification by, another"; (iii) "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship approval, status, affiliation or connection that such

28

person does not have"; and (iv) "[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another." Tenn. Code Ann. §§ 47-18-104(b)(2)-(3), (5), (7). These are specifically enumerated practices for which a private right of action remains available.

154. Defendant's use of the confusingly similar "Blueprint Wellness Co." and "The Blueprint Package" marks for identical holistic-health and genetic-analysis services in the same market, together with her concealment of her affiliation and former affiliation with Boro, is likely to cause confusion or misunderstanding as to the source, sponsorship, approval, affiliation, connection, or association of her services, in violation of Tenn. Code Ann. §§ 47-18-104(b)(2) and (b)(3).

155. Defendant's promotion of services which purport to provide "expert guidance" on genetic test interpretation and corresponding medical consultation materially misrepresents both the nature of the services Defendant purports to provide as well as Defendant's credentials to provide such advice.

156. As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Boro has suffered an ascertainable loss of money or property within the meaning of Tenn. Code Ann. § 47-18-109(a)(1).

157. Defendant's violations were willful and knowing, entitling Boro to treble damages under Tenn. Code Ann. § 47-18-109(a)(3) and to its reasonable attorneys' fees and costs under Tenn. Code Ann. § 47-18-109(e)(1).

## COUNT XI — VIOLATION OF THE DEFEND TRADE SECRETS ACT

158. Boro incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

29

159. The Boro Trade Secrets, individually and collectively, are "trade secrets" within the meaning of 18 U.S.C. § 1839(3) because they constitute financial, business, scientific, technical, and/or economic information—including methods, techniques, processes, and compilations—that derive independent economic value from not being generally known or readily ascertainable by proper means, and as to which Boro has taken reasonable measures to maintain secrecy.

160. Boro provides the Boro Goods and Services, which utilize the Boro Trade Secrets, to provide holistic healthcare services to patients across the United States. As such, the Boro Trade Secrets are related to products and services used in, and intended for use in, interstate commerce. 18 U.S.C. § 1836(b)(1).

161. Boro is the owner of the Boro Trade Secrets within the meaning of 18 U.S.C. § 1839(4).

162. Defendant misappropriated the Boro Trade Secrets within the meaning of 18 U.S.C. § 1839(5) by acquiring them under circumstances giving rise to a duty to maintain their secrecy, and by using and/or disclosing them without Boro's express or implied consent, knowing or having reason to know that her knowledge of them was acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

163. As a direct and proximate result of Defendant's misappropriation, Boro has suffered and will continue to suffer damages, including actual losses and the unjust enrichment of Defendant, as well as irreparable harm.

164. Defendant's misappropriation was willful and malicious within the meaning of 18 U.S.C. § 1836(b)(3)(C)–(D).

30

165. Boro is entitled to relief under 18 U.S.C. § 1836(b)(3), including injunctive relief; damages for actual loss and for unjust enrichment (or, in lieu thereof, a reasonable royalty); and, to the extent permitted by law, exemplary damages and reasonable attorneys' fees.

**COUNT XII — VIOLATION OF THE TENNESSEE UNIFORM TRADE SECRETS ACT**

166. Boro incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

167. The Boro Trade Secrets, individually and collectively, are "trade secrets" within the meaning of Tenn. Code Ann. § 47-25-1702(4) because they consist of information, including formulas, patterns, compilations, programs, devices, methods, techniques, processes, and/or know-how, that derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, others who can obtain economic value from their disclosure or use, and that is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

168. Defendant "misappropriat[ed]" the Boro Trade Secrets within the meaning of Tenn. Code Ann. § 47-25-1702(2) by acquiring them through improper means and through breach of a duty to maintain their secrecy, and by using and/or disclosing them without Boro's express or implied consent, knowing or having reason to know that her knowledge of them was acquired under circumstances giving rise to a duty to maintain their secrecy and limit their use.

169. As a direct and proximate result of Defendant's misappropriation, Boro has suffered actual loss, and Defendant has been unjustly enriched, entitling Boro to damages under Tenn. Code Ann. § 47-25-1704(a).

170. Defendant's misappropriation was willful and malicious, entitling Boro to exemplary damages in an amount not exceeding twice the award of compensatory damages

under Tenn. Code Ann. § 47-25-1704(b), and to its reasonable attorneys' fees under Tenn. Code Ann. § 47-25-1705.

171. Boro is entitled to injunctive relief under Tenn. Code Ann. § 47-25-1703 to enjoin Defendant's actual and threatened misappropriation of the Boro Trade Secrets.

## PRAYER FOR RELIEF

WHEREFORE, Boro respectfully requests that the Court enter judgment in its favor and against Defendant and award the following relief:

A. An accounting to show the amount of Defendant's sales, revenues, costs, profits, and other financial benefits attributable to Defendant's infringing and unfair conduct;

B. On Count I, an award of compensatory damages for Boro's losses; disgorgement of the compensation, profits, and other benefits Defendant obtained through her breaches, including forfeiture of compensation paid during the period of her disloyalty; the imposition of a constructive trust over those benefits; and punitive damages;

C. On Count II, an award of Boro's damages for Defendant's breach of the Agreement and preliminary and permanent injunctive relief enforcing the Agreement's covenant not to compete;

D. On Counts III and IV, an award of compensatory damages, disgorgement of Defendant's resulting profits and unjust enrichment, punitive damages, and preliminary and permanent injunctive relief enjoining Defendant from further soliciting or diverting Boro's patients, prospective patients, and goodwill;

E. On Counts V, VI, VII, VIII, and IX:

    a. Preliminary and permanent injunctive relief under 15 U.S.C. § 1116 and Tennessee law enjoining Defendant, and all persons acting in concert with her,

from using "Blueprint Wellness Co.," "The Blueprint Package," or any other mark confusingly similar to the BIOLOGICAL BLUEPRINT Mark in connection with holistic-health, genetic-analysis, or related services, together with an order directing Defendant, within thirty (30) days after being enjoined, to file with the Court and serve on Boro a report detailing the manner of her compliance with the injunction;

b. An award of Defendant's profits, Boro's actual damages, and the costs of the action under 15 U.S.C. § 1117(a), together with, in the Court's discretion, enhanced damages of up to three times such amount on the ground that this is an exceptional case, as well as Boro's damages, Defendant's profits, and punitive damages under Tennessee common law;

c. On Count VII, an order pursuant to 15 U.S.C. § 1125(d)(1)(C) directing Defendant, within ten (10) business days of the entry of final judgment, to transfer to Boro the registration of the Domain Name and the registration of any other domain name owned or controlled by Defendant that is confusingly similar to the BIOLOGICAL BLUEPRINT Mark, and awarding Boro the greater of Defendant's profits and Boro's actual damages or the maximum statutory damages available under 15 U.S.C. § 1117(d); and

d. An order under 15 U.S.C. § 1118 requiring the delivery up and destruction of all labels, signs, prints, packages, advertisements, marketing materials, and other materials in Defendant's possession or control that bear the infringing "Blueprint" marks;

33

F. On Count X, an award of Boro's actual damages, trebled for Defendant's willful and knowing violations under Tenn. Code Ann. § 47-18-109(a)(3);

G. On Counts XI and XII:

    a. Preliminary and permanent injunctive relief enjoining Defendant, and all persons acting in concert with her, from using or disclosing the Boro Trade Secrets, and requiring the return or destruction of all Boro Trade Secrets in her possession, custody, or control, pursuant to 18 U.S.C. § 1836(b)(3)(A) and Tenn. Code Ann. § 47-25-1703;

    b. Damages for Boro's actual losses caused by Defendant's misappropriation, together with damages for any unjust enrichment not addressed in computing actual loss, or, in lieu of damages measured by any other method, damages measured by a reasonable royalty, pursuant to 18 U.S.C. § 1836(b)(3)(B) and Tenn. Code Ann. § 47-25-1704(a); and

    c. Exemplary damages of up to twice the amount of compensatory damages under Tenn. Code Ann. § 47-25-1704(b) and, to the extent permitted by law, exemplary damages under 18 U.S.C. § 1836(b)(3)(C);

H. Boro's reasonable attorneys' fees and costs under 15 U.S.C. § 1117, Tenn. Code Ann. § 47-18-109(e), Tenn. Code Ann. § 47-25-1705, and, to the extent permitted by law, 18 U.S.C. § 1836(b)(3)(D);

I. Pre-judgment and post-judgment interest as allowed by law; and

J. Such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Protect Your Earth Suit, Inc. d/b/a Boro

Holistic Health hereby demands a trial by jury of all issues in its Complaint so triable.

Dated: July 6, 2026                     Respectfully submitted,

                                        /Derrick M. Davis/
                                        **TRUST TREE LEGAL, P.C.**
                                        798 Berry Road #41400
                                        Nashville, Tennessee 37204

                                        Derrick M. Davis (TN Bar No. 037122)
                                            Telephone: (865) 867-7500
                                            Email: derrick@trusttree.com

                                        Kevin P. Hartley (TN Bar No. 029199)
                                            Telephone: (615) 469-0451
                                            Email: kevin@trusttree.com

                                        *Attorneys for Plaintiff, Protect Your Earth*
                                        *Suit, Inc. d/b/a Boro Holistic Health*

# VERIFICATION

STATE OF TENNESSEE         §
§
§
COUNTY OF RUTHERFORD     §

       BEFORE ME, the undersigned authority, personally appeared Dr. Suzanna Underwood, Chief Executive Officer and duly authorized representative on behalf of Protect Your Earth Suit, Inc. d/b/a Boro Holistic Health, whose identity is known to me. After I administered an oath, affiant testified as follows:

       "My name is Dr. Suzanna Underwood. I am the Chief Executive Officer for Protect Your Earth Suit, Inc. d/b/a Boro Holistic Health. I am authorized and capable of making this verification on behalf of Protect Your Earth Suit, Inc. d/b/a Boro Holistic Health.

       I have read Protect Your Earth Suit, Inc. d/b/a Boro Holistic Health's Verified Complaint. The facts stated in it are within my personal knowledge and are true and correct based on the information available to me at this time."

*Suzanna underwood*

_____

Dr. Suzanna Underwood
Chief Executive Officer
Protect Your Earth Suit, Inc. d/b/a Boro
Holistic Health

       Sworn to and subscribed before me by Dr. Suzanna Underwood on this __3rd__ day of __July__, 2026.

*[Notary Seal: BECKY HAMMERS — STATE OF TENNESSEE NOTARY PUBLIC — My Commission Expires on 06/16/2029 — RUTHERFORD COUNTY]*

*Becky Hammers*

_____
Notary Public in and for the
State of Tennessee

My Commission expires: __06/16/29__